IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

HARVEY PATRICK SHORT,

          Plaintiff,

v.                                    Case No. 2:06-cv-00933

PRIMECARE MEDICAL - WV[1],
OFFICER FRED,
DR. CORDER, Psychiatrist,
OFFICER BUSH,
NURSE LEE ANN,
OFFICER TERRY,
OFFICER BARRY,
LIEUTENANT ROGERS,
JOHN McKAY, Jail Administrator,
DAVID FARMER, Counselor Supervisor,
LAVANA DAVIS-HARVEY, Counselor,
SERGEANT THOMPSON,
SERGEANT BINOIN,
SERGEANT ATKINS,
MARK BECK, Physician Assistant,
SOUTH CENTRAL REGIONAL JAIL,

          Defendants.


**PROPOSED FINDINGS AND RECOMMENDATION**

     By Standing Order, this civil action was referred to the
undersigned United States Magistrate Judge for submission of
proposed findings and recommendation for disposition.  By Order
entered March 16, 2007 (docket # 9), Plaintiff's application to
proceed without prepayment of fees was granted, and summonses were
issued.

---

     [1]The correct corporate name is PrimeCare Medical of West
Virginia, Inc.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Beginning September 14, 2005, Plaintiff was incarcerated as a state pre-trial detainee at the South Central Regional Jail (hereinafter "SCRJ"). Plaintiff's Complaint (# 2), filed pursuant to 42 U.S.C. § 1983 on November 1, 2006, contains two claims: (1) that medical and correctional staff at the SCRJ violated his privacy rights by listening to his sessions with the staff psychiatrist and denied him appropriate mental health care; and (2) that staff failed to protect him from another inmate they knew to be dangerous, and used excessive force in a discriminatory manner against Plaintiff when they stopped a fight between Plaintiff and the other inmate.

The paragraphs of Plaintiff's Complaint relating to his mental health care state as follows:

1) On or about September 14, 2005, the Plaintiff was arrested and confined in SCRJ;

2) Upon arrival, the Plaintiff was placed on suicide watch and given psychological medications;

3) Later, Dr. Corder placed the Plaintiff on additional psychological medications and special management housing with a watch;

4) Since the Plaintiff has been receiving psychological services at SCRJ, an officer Fred is present at the psychological interviews and listens to the entire communication between the Plaintiff and Dr. Corder, Psychiatrist.

5) A nurse from Primecare Medical-WV is also present during the psychological interviews and listens to the entire session.

6) That both Officer Fred and the nurse violate the privilege of confidentiality in the psychiatrist-client privilege and disclose the communications between the Plaintiff and Dr. Corder to other officers and nurses at the SCRJ;

7) That the Plaintiff have [sic; has] been forced to attend psychological sessions with Officer Fred and nurse present to listen to everything that is said; * * *

33) In July 2006, Nurse Lee Ann, an employee of Primecare Medical-WV, took the Plaintiff off his psychological medications to stop or hinder the Plaintiff from receiving psychological treatment and a snack bag at night;

34) As a result, the Plaintiff started hearing voices and experiencing delusions;

35) That Dr. Corder, Psychiatrist, had prescribed the psychological medications and that Nurse Lee Ann had no power or authority to stop the Plaintiff's psychological treatment;

36) The Plaintiff told Mark Beck, PA that Lee Ann, Nurse had cut off the Plaintiff from receiving psychological medications and that Nurse Lee Ann had no power or authority to overrule the psychiatrist, Dr. Corder, because that medication was prescribed by Dr. Corder;

37) That Nurse Lee Ann was denying the Plaintiff his psychological treatment;

38) Mark Beck, PA, neglected this complaint and said nothing and stopped the snack bag too which was ordered by Dr. Corder;

39) As a result, the Plaintiff has suffered further psychological injury and conditions by not having his medications since July 2006; * * *

41) Primecare Medical-WV did not properly train, supervise, educate, employ and select competent medical staff employees and made policies, rules, and regulations that allowed Nurse Lee Ann to interfere and stop the Plaintiff's psychological treatment prescribed by Dr. Corder;

3

42) That Mark Beck, PA, also knew that Lee Ann, Nurse, had no power and authority to stop the Plaintiff's psychological medications but allowed her to do it to injure the Plaintiff's mental health conditions further.

(Id. at 6, 10-12).

The paragraphs in Plaintiff's Complaint alleging failure to protect Plaintiff from another inmate, and use of excessive force in a discriminatory manner, state as follows:

8) In November 2005, Officer Bush received orders to move Inmate John Crawford into the same cell with the Plaintiff;

9) The Plaintiff who was housed on A-4 Pod on special management objected, and Officer Bush told the Plaintiff that Inmate Crawford was put in the cell with the Plaintiff to keep the Plaintiff in line;

10) John Crawford was on A-4 for assaulting his previous cellmates.  He was in SCRJ for assaulting and battering his mother and father at home;

11) Inmate Crawford threatened to kill the Plaintiff several times while they were locked down in the cell 23 hours a day for over one (1) month;

12) The Plaintiff wrote request forms and grievances to Counselor Lavana L. Davis-Harvey, Sergeant Thompson, Mr. David Farm[er], and Lieutenant Rogers requesting to get Inmate Crawford moved to another cell;

13) Inmate Crawford also talked to himself and threatened to kill himself while in the cell with the Plaintiff;

14) Inmate Crawford told the Plaintiff th[at] Inmate Crawford was on A-4 for fighting and attacking his cellmate;

15) The Plaintiff was on special management while in the cell with Inmate Crawford; Dr. Corder, Psychiatrist ordered it;

16) Sergeant Thompson had placed Inmate Crawford in the same cell with the Plaintiff knowing that Inmate Crawford

4

was severely psychotic, had violent behavior, and a history of physically attacking his cellmates;

17) A day in November 2005, John McKay, Jail Administrator, toured A-4, and the Plaintiff told John McKay about Inmate Crawford's threats and the fact that Inmate Crawford was sleeping on the floor and that an entire empty cell was open;

18) Mr. McKay asked Sergeant Binoin about another cell being open and Sergeant Binoin said yes but Inmate Crawford was not moved;

19) The Plaintiff wrote to Counselor Lavana Davis-Harvey, Lt. Rogers, Sgt. Thompson, and Mr. Farm[er] also trying to get Crawford moved to another cell due to his threats, homicidal and suicidal thoughts and his required to be sleeping on the floor;

20) None of the aforementioned state employees assisted or took any steps to protect the Plaintiff and Inmate Crawford assaulted and battered the Plaintiff while locked down in the cell;

21) That the Plaintiff had to fight for his life;

22) That another inmate Wayne Blair heard the fight and alerted Officer Terry and an Officer Barry and these two (2) officers did not try or attempt to stop the fight but watched it through the cell door for 3 or 4 minutes to see who would survive;

23) After the fight was over, Officer Bush came into the cell and pepper strayed [sic; sprayed] the Plaintiff;

24) That the Plaintiff was not hostile or anything and was just standing near the wall and Officer Bush pepper s[p]rayed the Plaintiff for no reason at all.  Inmate Crawford was not s[p]rayed with pepper mace;

25) Then Sergeant Atkins and Officer Terry told the Plaintiff to lay down;

26) Officer Terry and Sergeant Atkins held the Plaintiff down on the floor in the cell for 4 minutes;

27) The Plaintiff only had on boxer underwear and was on his stomach and Officer Terry and Sergeant Atkins had

5

their body weight on the Plaintiff's back twisting his arms and legs trying to break them;

28) The Plaintiff kept telling Officer Terry and Sgt. Atkins that he could not breath[e] but they continued to suffocate the Plaintiff more;

29) The Plaintiff was then hog[-]tied and handcuffed behind the back and shackled on both ankles;

30) The Plaintiff did not resist during this entire incident;

31) Inmate Crawford was treated properly during this entire incident, because he was white;

32) That the above state employees attacked the Plaintiff because they believed that they were helping finish Crawford's attack; * * *

40) During the Plaintiff's psychological sessions, the Plaintiff told Dr. Corder about the threats on his life by Inmate Crawford and Dr. Corder did nothing to prevent the attack[.]

(Id. at 7-10, 11).   Plaintiff sued the defendants in their individual and official capacities for compensatory and punitive damages in the amount of $500,000 as to each defendant.

## SERVICE OF PROCESS AND APPEARANCES BY COUNSEL

Pursuant to Rule 4(c)(2), *Fed. R. Civ. P.*, and 28 U.S.C. § 1915(d), the Marshals Service served the summonses and complaint on all defendants at the South Central Regional Jail.   The court appreciates the defendants' acceptance of service of process at that facility, even though the service may not have complied with the letter of the Rule.   The court does not understand why counsel for the West Virginia Regional Jail and Correctional Facility Authority entered an appearance only for defendants Officer Fred,

6

Officer Bush, Officer Terry, Officer Barry, David Farmer, Lavana Davis-Harvey, Lt. Rogers, and John McKay. No attorney has entered an appearance for Sergeant Thompson, Sergeant Binoin, and Sergeant Atkins, or South Central Regional Jail (which is not a suable entity). It is also puzzling that counsel did not provide the complete names of defendants where needed.

## PENDING MOTIONS

The following motions are pending before the court:

1. Motion by defendants Officer Fred, Officer Bush, Officer Terry, Officer Barry, David Farmer, Lavana Davis-Harvey, Lt. Rogers, and John McKay, Administrator ("the Jail Defendants"), to dismiss or, in the alternative, for summary judgment (# 30), supported by a memorandum (# 31). Plaintiff filed an "Opposition" (# 36), Memorandum (# 37), and Affidavit (# 38) with exhibits (# 38-3). After a status conference on October 4, 2007, and a formal notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), set forth in the Order entered October 10, 2007 (# 53), Plaintiff filed an "Oppositional Motion" (# 54) and a memorandum (# 55).

2. Motion by defendants PrimeCare Medical of West Virginia, Inc., Mark Beck, PA-C, and Steven L. Corder, M.D. ("the Medical Defendants") to dismiss complaint and alternative motion for summary judgment (# 33-3), supported by exhibits (## 33-4 [Stuart affidavit], 33-5 [Corder affidavit], 33-6 [Corder exhibits 1-7], 33-7 [Corder exhibits 8-14], 33-8 [Beck affidavit], 33-9 [Beck

exhibits 1-7], 33-10 [Beck exhibits 8-13], 33-11 [Beck exhibits 14-22], 33-12 [memorandum]).  Plaintiff filed an "Opposition" (# 39) and Affidavit (# 39-2).  The Medical Defendants filed a Reply (# 40) and affidavit of Elizabeth Hamilton (# 40-2).  After a status conference on October 4, 2007, and a formal notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), set forth in the Order entered October 10, 2007 (# 53), Plaintiff filed an "Oppositional Motion" (# 54) and a memorandum (# 55).  The Medical Defendants filed a Reply (# 56).

3.  Motion to dismiss complaint or, in the alternative, motion for summary judgment on behalf of defendant Nurse Leanne Justice (# 34), supported by Ms. Justice's affidavit (# 34-1), and a memorandum (# 35).  Plaintiff filed an "Opposition" (# 39) and Affidavit (# 39-2).  Defendant Justice filed a Reply (# 41).  After a status conference on October 4, 2007, and a formal notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), set forth in the Order entered October 10, 2007 (# 53), Plaintiff filed an "Oppositional Motion" (# 54) and a memorandum (# 55).  Defendant Leanne Justice filed a Reply (# 57).

4.  Motion to prevent retaliation for lawsuit, filed by Plaintiff (# 42), to which the Medical Defendants filed a Reply (# 43), and the Jail Defendants filed a Response (# 45).

## ANALYSIS

Conditions of confinement of state pre-trial detainees are

8

evaluated under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment.  <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 n.16 (1979).  However, the analysis of such claims under the Fourteenth Amendment shares much in common with the Eighth Amendment approach.  As noted by the United States Court of Appeals for the Fourth Circuit in <u>Riley v. Dorton</u>, 115 F.3d 1159, 1166 (4th Cir. 1997), "[b]oth seek to balance the rights of prisoners and pre-trial detainees against the problems created for officials by the custodial context."

<u>The Jail Defendants' Motion (# 30)</u>

The Jail Defendants move for dismissal or, in the alternative, for summary judgment.  In the "Background" section of the Memorandum (# 31, at 1), the Jail Defendants allege that Plaintiff was in the lockdown section of the SCRJ "for prior disciplinary problems."  In support of this statement, the Jail Defendants cite to their Exhibit 2 (# 30-2, Ex. 2, at 3-6), which are incident reports of Plaintiff's behavior in 2006 and 2007, <u>after</u> the incident with John Crawford.  The Jail Defendants offer no evidence that Plaintiff was in lockdown for disciplinary problems before the incident with John Crawford.  Plaintiff asserts that he was in lockdown for special management because of his mental health condition.  In the absence of evidence to the contrary, the court accepts Plaintiff's explanation.

It appears to the court that the motion to dismiss relates to

(1) Plaintiff's alleged failure to exhaust his administrative remedies, (2) Plaintiff's claims against state officials in their official capacities, and (3) their contention that Plaintiff's claim with respect to his health care treatment fails to state a claim upon which relief can be granted.   The Jail Defendants' motion for summary judgment relates to (a) Plaintiff's claim that officers used excessive force, and (b) the Jail Defendants' claim to qualified immunity.  (Memorandum, # 31.)

**Motion to Dismiss - Exhaustion of Administrative Remedies**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("the PLRA") states that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Prison conditions" means " . . . conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings."  18 U.S.C. § 3626(g)(2).  A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

In <u>Booth v. Churner</u>, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures.  <u>Id.</u> at 741.  In <u>Booth</u>, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action.  <u>Id.</u>

In <u>Porter v. Nussle</u>, 534 U.S. 516, 531 (2002), the Court held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they alleges excessive force or other some wrong."  Not only must a prisoner exhaust his administrative remedies, but he must also do so <u>properly</u>.  Proper exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits."  <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S. Ct. 2378, 2385 (2006) (quoting <u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1024 (7th Cir. 2002). [Emphasis in the original.]) That is, a prisoner must complete the administrative process in accordance with the applicable procedural rules of the process, including the deadlines.

The Court ruled in <u>Jones v. Bock</u>, 127 S. Ct. 910, 921 (2007), that an inmate's failure to exhaust remedies under the PLRA is an

affirmative defense; the inmate need not demonstrate in his complaint that he has exhausted applicable remedies.  <u>Jones</u> also held that an inmate does not automatically fail to exhaust when the inmate sues one or more defendants not named in the pertinent grievances.  <u>Id.</u>, at 923.  If a complaint contains claims, some of which have been exhausted, and some of which have not been exhausted, the entire complaint is not dismissed; the court proceeds only on the exhausted claims.  <u>Id.</u>, at 924-26.

The West Virginia Regional Jail and Correctional Facility Authority's ("the Authority") "Handbook of Inmate Rules and Procedures" contains an "Inmate Request and Grievance Procedure." The procedure calls for a grievance to be addressed in writing to the Administrator, with the availability of an appeal to the Chief of Operations of the Authority and, ultimately, to the Office of the Executive Director.

The court is presented with one sworn statement with respect to Plaintiff's alleged failure to exhaust administrative remedies. The Jail Defendants rely on the affidavit of John L. King II, Chief of Operations for the West Virginia Regional Jail and Correctional Facility Authority, which states that he did not find an Inmate Grievance appeal from Plaintiff concerning this case in his files. (# 30-2, Ex. 5, at 21-22.)  Plaintiff submitted his affidavit which states, in pertinent part, as follows:

> 12) I told Officer Bush that I was on special management
> and that John Crawford . . .

```
13) I told Officer Bush . . .
17) I personally wrote grievances and sent request forms
to Counselor Lavana L. Davis-Harvey, Sergeant Thompson,
David Farmer, and Lieutenant Rick Rogers . . .
22) One day in November, 2005, I told John McKay, Jail
Administrator and Sergeant Binion about . . .
23) I wrote request forms to Lavana Davis-Harvey, Lt.
Rogers, Sgt. Thompson, and Mr. Farmer . . .
37) I informed Mark Beck, PA . . .
38) I told Dr. Corder . . .
```

(# 38.)   Plaintiff makes no statement that he exhausted his administrative remedies and presents no exhibit or other evidence which purports to prove that he did exhaust his remedies, as required by the Authority's handbook.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has brought a "civil action with respect to prison conditions," that Plaintiff is a "prisoner," and that Plaintiff did not exhaust such administrative remedies as were available.

## Motion to Dismiss - Official Capacities

The Jail Defendants assert that, as State employees, they are immune from liability for actions taken in their official capacities.  Plaintiff did not respond to this argument.  The Supreme Court ruled, in Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989), that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."

The undersigned proposes that the presiding District Judge **FIND** that the Jail Defendants in their official capacities are not "persons" under § 1983.

13

**Motion to Dismiss - Failure to State a Claim (Medical Care)**

Plaintiff's allegations against the Jail Defendants with respect to his medical and mental health treatment are set forth in Complaint paragraphs 4, 6, and 7, and relate to the presence of a correctional officer, Officer Fred, during Plaintiff's communications with Dr. Corder, his psychiatrist, and the alleged disclosure of those communications by Officer Fred to others.

The Jail Defendants contend that Plaintiff's complaints about his health care are merely an expression of dissatisfaction with the medical treatment that he received (# 31, at 9.) They contend that Plaintiff does not complain of inadequate medical care by Jail personnel. Id., at 10. They justify the presence of Jail personnel during the delivery of medical services as necessary to protect the security of healthcare providers. Id. Finally, the Jail Defendants assert that Plaintiff has failed to allege facts sufficient to meet the standard of deliberate indifference to his serious medical needs. Id.

It appears to the court that Plaintiff is not complaining about the Jail Defendants' delivery of health care services to him; he is complaining that the Jail Defendants violated his right to have private sessions with the psychiatrist, and his right to have his communications with his psychiatrist kept secret.

Section 1983 provides a cause of action for plaintiffs to seek redress for violation of their federal constitutional rights.

14

There is no federal constitutional right to have a confidential communication with a physician, including a psychiatrist.  The so-called physician-patient privilege is grounded in the law of evidence, not the Constitution of the United States.  Since no doctor-patient privilege existed at common law, <u>Whalen v. Roe</u>, 429 U.S. 589, 602 n.28 (1977), courts have declined to rule that such a privilege exists in federal law.  <u>In re Doe</u>, 711 F.2d 1187 (2d Cir. 1983).

To the extent that Plaintiff's allegations of breach of confidentiality are construed to be a claimed violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the court notes that numerous courts have held that HIPAA does not create a private cause of action.  <u>See</u> <u>University of Colorado Hosp. Auth. v. Denver Publ'g Co.</u>, 340 F. Supp.2d 1142 (D. Colo. 2004); <u>Barnes v. Glennon</u>, No. 9:05-cv-0153 (LEK/RFT), 2006 WL 2811821 at *5 (N.D.N.Y. Sept. 28, 2006), and cases cited therein.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's claim to privileged and confidential communications with the jail's psychiatrist fails to state a claim upon which relief can be granted under Section 1983.

### Motion for Summary Judgment - Standard of Review

In evaluating summary judgment motions, Rule 56 of the Federal Rules of Civil Procedure provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

> admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material
> fact and that the moving party is entitled to a judgment
> as a matter of law.

Fed. R. Civ. P. 56(c).  Material facts are those necessary to

establish the elements of a party's cause of action.  <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the

record and all reasonable inferences drawn therefrom in a light

most favorable to the non-moving party, a reasonable fact-finder

could return a verdict for the non-movant.  <u>Id.</u>  The moving party

has the burden of establishing that there is an absence of evidence

to support the nonmoving party's case.  <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 325 (1986).  Even if there is no dispute as to the

evidentiary facts, summary judgment is also not appropriate where

the ultimate factual conclusions to be drawn are in dispute.

<u>Overstreet v. Kentucky Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th

Cir. 1991).

If the moving party meets this burden, then the non-movant

must set forth specific facts as would be admissible in evidence

that demonstrate the existence of a genuine issue of fact for

trial.  Fed. R. Civ. P. 56(c); <u>Id.</u> at 322-23.

> [The] adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleading,
> but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific
> facts showing that there is a genuine issue for trial.
> If the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against the

16

adverse party.

Fed. R. Civ. P. 56(e).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

### Motion for Summary Judgment - Failure to Protect

Plaintiff's Complaint alleges the following significant facts concerning his claim that the Jail Defendants failed to protect him from another inmate: Plaintiff was mentally ill and being specially managed; jail officials decided to put John Crawford, a person known to be psychotic and violent, in the same cell with Plaintiff to keep Plaintiff in line; Plaintiff objected; Crawford threatened Plaintiff; Plaintiff repeatedly asked that Crawford be moved; Plaintiff told jail officials about Crawford's threats and of an empty cell; jail officials confirmed that there was an empty cell; Crawford was not moved; Plaintiff continued to ask in writing that

17

Crawford be moved due to his threats and bizarre behavior; Crawford attacked Plaintiff; jail officials watched the fight for several minutes before attempting to stop it.

The Jail Defendants do not address Plaintiff's claim that jail officials failed to protect him from John Crawford, that Crawford attacked Plaintiff, and that Plaintiff was injured.

### Motion for Summary Judgment - Excessive Force

Plaintiff alleges the following facts with respect to his claim that officers used excessive force on Plaintiff after the fight was over: officers sprayed Plaintiff with mace; officers held Plaintiff on the floor for 4 minutes; the officers were trying to break his arms and legs; officers were suffocating him; officers hog-tied and handcuffed him, and shacked his ankles; Plaintiff did not resist; officers used force on Plaintiff because he is black and did not use force on Crawford because he is white.

The Jail Defendants argue in their Memorandum, citing to their Exhibit 3, that "Plaintiff was engaged in disruptive and violent behavior.  The Plaintiff was a danger to himself, other inmates, and staff.  The Plaintiff refused orders and was physically aggressive with another inmate." Presumably, these points are made to suggest that Plaintiff's behavior justified the officers' actions against him.  Exhibit 3, # 30-2, pages 7-19, contains incident reports of the fight.  All of the reports are unsworn statements, and thus do not qualify as documents on which summary

judgment may be based.

There is no dispute that there was a fight between Crawford and Plaintiff in the cell.  Plaintiff's affidavit asserts that, as a result of the fight or attack by Crawford and the officers' actions, he suffered a cut above his eye, was sprayed by pepper spray, "could hardly walk for a week," and still has (as of April 17, 2007) back pain and soreness.  (# 38, at 8.)  A pre-trial detainee cannot prevail on a Fourteenth Amendment excessive force claim if his injury is de minimus.  See Riley v. Dorton, 115 F.3d at 1166.  Quoting from the Supreme Court's opinion in Hudson v. McMillion, 503 U.S. 1, 9-10 (1992), the Riley court stated:

> "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action" . . . . To permit those in custody to bring excessive force claims without any showing of injury would violate that very principle.  The de minimus nature of Riley's alleged injuries cannot be squared with Riley's need to demonstrate excessive force amounting to punishment.  Bell, 441 U.S. at 535, 99 S. S. Ct. at 1871-72.  Punishment must mean something more than trifling injury or negligible force.

115 F.3d at 1167.  The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has made the necessary showing that his injuries from any force used against him were more than de minimus, and that the Jail Defendants have failed to submit admissible evidence that they were justified in the amount of force used against Plaintiff and that they are entitled to qualified immunity.

For these reasons, it is respectfully **RECOMMENDED** that the

presiding District Judge:

1.  Grant the Jail Defendants' Motion to Dismiss for failure to exhaust administrative remedies;

2.  Grant the Jail Defendants' Motion to Dismiss them <u>in their official capacities only</u>;

3.  Grant the Jail Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted with respect to Plaintiff's claim that he had a right to confidential communication with the psychiatrist;

4.  Deny the Jail Defendants' Motion for Summary Judgment.

<u>The Medical Defendants' Motion (# 33-3)</u>

### Motion to Dismiss

The Medical Defendants move for dismissal or, in the alternative, for summary judgment.  As to either motion, the Medical Defendants have submitted affidavits and exhibits in support of their arguments that there were no actionable breaches of doctor-patient confidentiality, and that they were not deliberately indifferent to Plaintiff's serious medical needs. Rule 12(b) provides as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The court does not exclude the matters outside the pleadings which

20

are presented, and has determined that they are appropriately considered.  The court has established above that Plaintiff was advised of his right and duty to respond, as set forth in Rule 56, and he has done so.  Accordingly, the motion to dismiss should be denied as moot.

The Medical Defendants also move to dismiss based on Plaintiff's failure to exhaust administrative remedies, relying upon and incorporating the Jail Defendants' arguments and affidavit regarding the same.  Plaintiff did not refute the Medical Defendants' assertion that he did not exhaust the remedies available to him.  In West v. Atkins, 487 U.S. 42, 54 (1988), the Supreme Court held that those who provide medical services to prison inmates act under color of state law for the purpose of § 1983.  Thus the court concludes that the phrase "the effects of actions by government officials on the lives of persons confined in prison," 18 U.S.C. § 3626(g)(2), includes the provision of health care to SCRJ inmates by the Medical Defendants.

### Motion for Summary Judgment - Confidentiality

The paragraphs of Plaintiff's Complaint concerning the Medical Defendants' alleged breach of his right to confidential communications with Dr. Corder are ## 4-7.

The court has set forth above a discussion of the pertinent law on this issue, concluding that an inmate has no constitutional right to doctor-patient confidentiality which is actionable under

21

§ 1983.  In addition, the Medical Defendants have submitted their Exhibit 1 to the affidavit of Cheryle A. Stuart, "Consent to Mental Health Evaluation and Treatment Via Telemedicine."  That document, which bears Plaintiff's signature, provides, in pertinent part, as follows:

> Contacts which you have with the mental health staff of this correctional facility are usually considered confidential or privileged communication.  This means that generally, whatever you say and your testing results are held in confidence. * * *
>
> However there are limits to confidentiality, which you need to be aware of.  Other mental health and health services staff at this facility have access to notes which are kept regarding all mental health contacts.  If you decide to receive counseling or other mental health treatment, Mental Health will be reviewing your records and discussing your situation with counseling staff who may not be seeing you.
>
> Furthermore, if you tell mental health staff that you intend to harm yourself or someone else, or threaten the security of the jail, mental health staff will advise other staff of such danger, in order to protect your well being and that of others.  * * * Also, officials of the court, law enforcement officials, Department of Health and Human Services staff or anyone else stipulated by the law may review or receive copies of your mental health records without your prior authorization.  Your mental Health records may also be released by your written consent.
>
> Your signature below indicates that you have read this statement or that it was read to you, that you understand the limits of confidentiality with contracted facility and that you agree to receive the following mental health services:
>
> "Mental Health evaluation and/or treatment as needed until I withdraw my consent."
>
> /s/ Harvey Short     9/30/05

(# 33-4, at 5.)

Plaintiff has not refuted these matters relating to confidentiality, the sharing of information, and the need to promote jail security. The undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue as to any material fact with respect to the confidentiality of Plaintiff's conversation with Dr. Corder or the content of Plaintiff's mental health records, and that the Medical Defendants are entitled to judgment as a matter of law on this issue.

### Motion for Summary Judgment - Deliberate Indifference

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see also Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Munic. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. See Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the

> defendant's position.  *See* *id.*  Nevertheless, mere
> negligence or malpractice does not violate the Eighth
> Amendment.  *See* Estelle, 429 U.S. at 106.

Miltier, 896 F.2d at 851-852.

The paragraphs of Plaintiff's Complaint concerning the Medical Defendants' alleged deliberate indifference to his serious medical needs are ## 1-3, 33-39, and 42.  Plaintiff alleges that Nurse Lee Ann stopped Plaintiff's psychological medications (and a snack at night) without authorization by Dr. Corder, thereby denying Plaintiff his mental health treatment, that Mark Beck knew that Nurse Lee Ann had stopped the medications without authorization but did nothing, that Mark Beck also discontinued Plaintiff's snack, and Plaintiff's mental health condition worsened as a result of the lack of medications.

It is undisputed that Plaintiff was arrested and incarcerated at SCRJ on September 14, 2005, and that during his intake screening, he admitted to a psychiatric history.  It is also undisputed that on September 30, 2005, Plaintiff was evaluated by defendant Dr. Corder, who noted a presumed diagnosis of schizophrenia, with a history of prior head injury, and prescribed Navane, an antipsychotic, and Cogentin, both for ninety days. (Affidavit of Dr. Corder, # 33-5, ¶¶ 10-11, at 3, # 33-6, Corder Ex. 1, at 1.)  The court assumes, for the purpose of considering the motion for summary judgment, that schizophrenia is a serious medical need.

24

Dr. Corder evaluated Plaintiff via telepsychiatry ("telepsych"), an audio-video link between Dr. Corder's office in Wheeling, West Virginia, and the SCRJ. A PrimeCare nurse with the inmate's chart sat with Plaintiff during the telepsych session, and a correctional officer attended to provide security for the nurse. Id., ¶¶ 5-9, at 2-3. Dr. Corder had telepsych sessions with Plaintiff on September 30, October 28, November 11, November 18, December 2, and December 9, 2005, February 3, and April 14, 2006, and February 2, 2007. Id., ¶¶ 10, 12, 14, 15, 17, 18, 19, 20, and 26, at 3-7.

The following is a summary of Dr. Corder's affidavit (# 33-5) and orders concerning his telepsych evaluations of Plaintiff, with references to paragraphs in the affidavit and exhibits, as appropriate:

10/28/05: Plaintiff complained of abdominal pain from the Navane, and advised that he had taken Haldol and "done okay." Navane was discontinued; Haldol twice a day was prescribed. Cogentrin was renewed. ¶ 12; # 33-6, Corder Ex. 2.

October and November, 2005: Medication Administration Records reflect that Plaintiff routinely refused to take Haldol. # 33-6, Corder Ex. 3.

11/11/05: Plaintiff on suicide watch, depressed and hearing voices. Plaintiff denied suicidal ideation and denied having hallucinations. Plaintiff stated he did not take his medications because he was sleeping when the "pill pass" occurred. Decreased Haldol to once a day (at night) because he was not taking the morning dose. ¶ 14; # 33-6, Corder Ex. 4.

11/18/05: Plaintiff in Chronic Care-Mental Health Clinic. Complained that the medications upset his stomach. Plaintiff was not psychotic. Ordered a snack for Plaintiff to have when

25

he took his medications. ¶¶ 15-16; # 44-6, Corder Exs. 5 and 6.

12/2/05: Plaintiff had no complaints and was stable. No changes. ¶ 17; # 33-6, Corder Ex. 7.

12/9/05: Plaintiff in Chronic Care-Mental Health Clinic. No complaints, no hallucinations, no paranoia. Plaintiff was not compliant with his medications. Decided to discontinue the medications. ¶ 18; # 33-6, Corder Ex. 8.

[12/12/05; Incident with inmate Crawford.]

2/3/06: Plaintiff denied having hallucinations. Plaintiff had no current, active psychiatric symptoms. He was not taking psychiatric medications. ¶ 19; Ex. 33-7, Corder Ex. 9.

4/14/06: Plaintiff reported that the "voices" had stopped and then resumed. Plaintiff said he could tolerate the voices and that he was not taking medication. Dr. Corder ordered the Haldol and Cogentin restarted for 90 days. ¶ 20; # 33-7, Corder Ex. 10.

4/15/06: Plaintiff asked to take his psychiatric medications at night, which was approved. ¶ 21; # 33-7, Corder Ex. 11.

May, June, July, 2006: Medication Administration Records indicate that Plaintiff took Haldol sporadically and often refused it when it was offered. ¶ 22; # 33-7, Corder Ex. 12.

July, 2006: Plaintiff's psychiatric medications were discontinued due to noncompliance (that is, no order to continue the medications for another 90 days was made). Leeann Justice did not take Plaintiff off his medications. ¶¶ 23-24.

9/27/06: Plaintiff told Mark Beck that Dr. Corder had ordered an evening snack because of the psychiatric medications' effect on his stomach. Plaintiff was not taking psychiatric medications in September, 2006. ¶ 25; # 33-7, Corder Ex. 13.

2/2/07: Plaintiff asked to resume taking psychiatric medications "due to problems sometimes hearing voices." Dr. Corder concluded that Plaintiff had "fairly typical psychosis," and focused on receiving an evening snack. Dr. Corder ordered Haldol in the evening and Cogentin twice a day. ¶ 26; # 33-7, Corder Ex. 14.

The presence or absence of "voices" as a symptom of psychosis was not related to Plaintiff's taking of psychiatric medications. He "does not appear to have suffered any psychological or psychiatric injury from not taking psychiatric medications. It was Harvey Short's choice not to take the medications which I had ordered for him." ¶ 27.

The affidavit of Mark W. Beck (# 33-8) confirms Dr. Corder's statements concerning his evaluation and treatment of Plaintiff, particularly that Plaintiff routinely refused to take Haldol. ¶¶ 8, 16. On September 18, 2006, Beck directed that Plaintiff's evening snack be discontinued because Plaintiff was no longer taking psychiatric medications. ¶ 18; # 33-10, Beck Ex. 13. On September 27, 2006, Plaintiff told Beck that Dr. Corder had ordered the evening snack, and Beck ordered that the snack resume. ¶ 20; # 33-11, Beck Ex. 16. Upon determining that Plaintiff was no longer taking the psychiatric medications, the snack was discontinued. ¶¶ 21-22; # 33-11, Beck Exs. 15-16. Beck denies that Plaintiff told him that a nurse stopped his psychiatric medications, and contends that the medications were not renewed because Plaintiff was not taking them. ¶ 28.

The affidavit of Cheryle A. Stuart, the Contract Administrator for PrimeCare at SCRJ, confirms Plaintiff's request for an evening snack. (# 33-4, ¶ 13.) When his psychiatric medications were resumed in early 2006, the evening snack also resumed. Id.; Ex. 4.

Plaintiff's affidavit in opposition to the Medical Defendants' affidavits and exhibits contends that it is the nurses' obligation to insure that Plaintiff takes his medications and that it was Dr.

27

Corder's duty to take action concerning inmate Crawford (# 39-2.) Neither contention is correct under the law.  Each inmate has a choice whether to take the medication which is prescribed, and jail staff are under no obligation to pursue inmates, to roust them from bed, or to plead with them to take the drugs.  The affidavit of nurse Elizabeth Hamilton (# 40-2) establishes the good faith effort of medical personnel to administer medications to inmates.

Whether Plaintiff refused to take his medications or simply failed to go to the dispensing nurse to receive them, is not significant.  It is the court's obligation to determine whether the Medical Defendants were deliberately indifferent to Plaintiff's serious mental impairment, and it is plain that they were not.  The medications were available for him to take, mental health services were accessible to him, and special management custody was provided to him for months.  Plaintiff's self-serving affidavit does not refute the specific assertions in the Medical Defendants' affidavits, which are supported by exhibits taken from Plaintiff's medical records.

There is no evidentiary support for Plaintiff's allegation that Nurse Leanne stopped Plaintiff's psychiatric medications. Plaintiff's medical records prove conclusively that Dr. Corder was solely responsible for prescribing or not prescribing the medications.

Dr. Corder's responsibility was to provide necessary mental

28

health care to Plaintiff, not to assure his personal safety.  If Plaintiff feared inmate Crawford, it was his responsibility to inform correctional officers, which he claims to have done.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has a serious medical need as to which the Medical Defendants were not deliberately indifferent, that there is no genuine issue as to any material fact, and that the Medical Defendants are entitled to judgment as a matter of law.  For these reasons, it is respectfully **RECOMMENDED** that the presiding District Judge:

5.  Grant the Medical Defendants' Motion to Dismiss with respect to Plaintiff's failure to exhaust the remedies available to him, deny the remainder of the Medical Defendants' Motion to Dismiss as moot;

6.  Grant the Medical Defendants' Motion for Summary Judgment.

<u>Defendant Nurse Leanne Justice's Motion (# 34)</u>

Defendant Justice moves for dismissal or, in the alternative, for summary judgment.  As to either motion, she has submitted her affidavit and relied upon and incorporated the affidavits of Dr. Corder and Mark Beck in support of her arguments that she was not deliberately indifferent to Plaintiff's serious medical needs.  These affidavits and their supporting exhibits are persuasive that only Dr. Corder controlled the prescribing of psychiatric medications for Plaintiff, and that Plaintiff was given the opportunity, twice a day, to take the medications but often did not

do so.

For the reasons set forth with respect to the Medical Defendants' alternative motions, the undersigned proposes that the presiding District Judge **FIND** that defendant Justice did not deprive Plaintiff of his psychiatric medications, was not deliberately indifferent to Plaintiff's serious medical needs, there is no genuine issue as to any material fact, and defendant Justice is entitled to judgment as a matter of law.  It is respectfully **RECOMMENDED** that the presiding District Judge:

7.   Grant defendant Justice's Motion to Dismiss relating to Plaintiff's failure to exhaust the remedies available to him, and deny the remainder of the motion as moot; and

8.  Grant defendant Justice's Motion for Summary Judgment.

Plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have ten days (filing of objections) and three days (service/mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such

objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Chief Judge Goodwin and this Magistrate Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.


  February 25, 2008                   Mary E. Stanley
         Date                         Mary E. Stanley
                                      United States Magistrate Judge